222 F.2d 893
 55-1 USTC P 9475
 COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Murray THOMPSON, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Kibbey W. COUSE, Respondent.
Murray THOMPSON, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Kibbey W. COUSE, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 11370, 11371, 11373, 11374.
 United States Court of Appeals Third Circuit.
 Argued Jan. 17, 1955.
Decided May 27, 1955.
 
 Israel B. Greene, Newark, N.J. (Bernard Hellring, Newark, N.J., on the brief), for taxpayers.
 Dudley J. Godfrey, Jr., washington, D.C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Special Assts. to the Atty. Gen., on the brief), for Commissioner.
 Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 The taxpayers and the Commissioner have appealed from the decisions of the Tax Court fixing the value of certain contracts at $250,000. 21 T.C. 448. The taxpayers contend that on the evidence the value could only have been fixed somewhere between $750,000 and $854,000. The Commissioner contends that the value must be deemed to be zero because the evidence affords no basis for valuation, but contrarily, if it does, then the Tax Court's determination is correct.
 
 
 2
 The background of these appeals is set forth in our prior decision herein: 1953, 205 F.2d 73. The contracts involved were awarded by the government to a corporation which dissolved before completing them. The taxpayer Couse contributed his 95 percent interest in the contracts to a partnership consisting of himself and taxpayer Thompson. Thompson purchased his interest in the contracts from his mother, Maud Dale, and contributed it to the partnership in return for a 5 percent interest therein. The partnership sought to use the contracts as a basis for amortization, but the Tax Court had determined that they were not assignable and therefore had no value. 18 T.C. 361. We reversed, and in remanding the cause to the Tax Court for further proceedings, said, at page 78 of 205 F.2d:
 
 
 3
 'To what extent the speculative character of the contracts should affect their fair market value and whether the contracts otherwise qualify as depreciable assets are issues the resolution of which involves questions of fact as well as of law. It is the function of the Tax Court to make that resolution initially.' Citing in the footnote Hormel v. Helvering, 1941, 312 U.S. 552, 560, 61 S.Ct. 719, 85 L.Ed. 1037.
 
 
 4
 There appears to be no dispute now that if a value of the contracts can be determined, they qualify as depreciable assets.
 
 
 5
 Neither the taxpayers nor the Commissioner presented evidence of value to the Tax Court in addition to that which had been presented before the remand, but upon which the Tax Court had not ruled. The taxpayers urge that since their witnesses rendered opinions of value ranging between $750,000 and $854,000, the Tax Court was limited thereto. The Commissioner urges that his first determination of a zero value is presumptively correct; that the evidence of the taxpayers related to the value of the business rather than to the contracts themselves; that assuming the contracts had value, the taxpayers have not borne their burden of establishing that value. However, as already stated, the Commissioner also takes the position that if there is a basis in the record upon which value can be determined, then it warrants the amount fixed by the Tax Court.
 
 
 6
 The Tax Court has performed the function of initially resolving the issue of value, for which the matter was remanded. Pursuant to the oft-cited practice, we will not reverse unless on a review of the entire record we are left with the conviction that the result obtained by the Tax Court is 'clearly erroneous'. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394-395, 68 S.Ct. 525, 92 L.Ed. 746; United States v. Yellow Cab Co., 1949, 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150.[1] On review of the record we cannot say that the Tax Court's fact finding on the issue of value was 'clearly erroneous'.
 
 
 7
 The Tax Court had before it full information concerning the history of the contracts involved and their subject matter. It had before it the financial histories of the corporation and the partnership. It had before it the necessary information concerning inventories, orders, and performance. It also had before it information concerning the risks incident to the contracts and the profit to be made, and an understanding of the times when the contracts were made and to be performed. Finally, it had before it the opinions of the taxpayers' witnesses, as well as information concerning the foundations thereof.
 
 
 8
 We agree with the Tax Court that the Commissioner's reliance upon the prima facie correctness of his zero value should be rejected. Although, as the Tax Court said, the problem of valuation is difficult, it is not insuperable. It is the function of the trier of fact to weigh all the elements properly considered in the valuation and to translate them into dollars and cents. If there is speculation in this, it is a product of the nature of the problem, but not a reason for abdicating the judicial function, which, in the administration of justice, is frequently called upon to appraise intangibles. Guggenheim v. Helvering, 2 Cir., 1941, 117 F.2d 469, 474, certiorari denied Guggenheim's Estate v. C.I.R., 1941, 314 U.S. 621, 62 S.Ct. 66, 86 L.Ed. 499; Colonial Fabrics v. Commissioner of Internal Revenue, 2 Cir., 1953, 202 F.2d 105, 107. Nor is it essential '* * * that there be testimony of the specific figure fixed by the Tax Court.' Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 1951, 192 F.2d 633, 635, certiorari denied 343 U.S. 941, 72 S.Ct. 1033, 96 L.Ed. 1347. And if the amount fixed is on the low side, it is attributable to the lack of more specific evidence on the part of the taxpayers. Cf. Cohan v. Commissioner, 2 Cir., 1930, 39 F.2d 540; and see Helvering v. Taylor, 1935, 293 U.S. 507, 515-516, 55 S.Ct. 287, 79 L.Ed. 623.
 
 
 9
 The taxpayers premise their argument on the assumption that their witnesses fixed the value of the contracts. The Tax Court held otherwise. We think it was plainly correct. Their testimony clearly showed the elements which went into the formation of their opinions, and adequately supports the criticism of the Tax Court. The testimony of the taxpayers was not very helpful, and their ability to state an opinion was minimized by their own witness. Moreover, the testimony as a whole manifests the difficulty of separating the business from the contracts. The witness Riley valued the contracts in terms of the going business. It is true, he said the company had not very much value aside from the contracts, but this is a relative matter for the business was adapted to the contracts and the contracts were not readily to be assumed without the facilities to perform them. The record establishes a basis for concluding that the company had value, for it had plant, equipment and machinery.[2] The taxpayers, furthermore, assert that 'It stands undisputed that the company had a plant, equipment, organization, necessary know-how, etc., ready and available to complete these contracts.'[3] It cannot be gainsaid that as a going concern these items would be treated as having value. The taxpayers' witness Wetzel left much to be desired in his testimony. We think his testimony is plausibly read as carrying with the contract features of the going business, including inventory. In addition, he based his opinion on a 'sure bet' of a million dollar profit within six months. As taxpayers contend, he managed to 'water down' his statement, but this was a matter which went to the evaluation of his testimony, a matter primarily for the fact-finder in the first instance. Finally, it may be noted that he premised his opinion on an estimate of profit which was admittedly the 'top outside figure', which could not be substantiated to a purchaser in an arm's length transaction.[4] And the shortcomings of his opinion, particularly with respect to time of performance, and the weight to be accorded various risks, such as cancellation, renegotiation, obtaining materials, etc., were properly assessed by the Tax Court.
 
 
 10
 Accordingly, it being our conclusion that the record has failed to disclose that the fact-finding of the Tax Court with respect to valuation was 'clearly erroneous', its decisions will be affirmed.
 
 
 
 [1]
 See also Colonial Fabrics v. Commissioner of Internal Revenue, 2 Cir., 1953, 202 F.2d 105, 107; Commissioner of Internal Revenue v. Penn Athletic Club, 3 Cir., 1949, 176 F.2d 939; Blum v. Commissioner of Internal Revenue, 3 Cir., 1950, 183 f.2d 281, 287
 
 
 [2]
 The corporation's books valued the plant at $235,146.38, land at $16,394.67, and leasehold improvements at $21,787.06. In examining the taxpayer Couse, counsel for the taxpayers presupposed tangible assets of about $180,000
 
 
 [3]
 Joint brief of Petitioners, p. 14
 
 
 [4]
 Commissioner's Appendix, 12b-13b